IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:10 CV 539

| | | |
|---|---|---|
| INTEGON NATIONAL INSURANCE COMPANY, INTEGON GENERAL INSURANCE CORPORATION, INTEGON INDEMNITY CORPORATION, INTEGON PREFERRED INSURANCE COMPANY, NATIONAL GENERAL INSURANCE COMPANY, and MIC GENERAL INSURANCE CORPORATION, | ) ) ) ) ) ) ) | |
| | ) | **COMPLAINT** |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ARTHROCARE CORPORATION, ARTHROCARE MEDICAL CORPORATION, and DISCOCARE, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

NOW COME the Plaintiffs, Integon National Insurance Company ("Integon National"), Integon General Insurance Corporation ("Integon General"), Integon Indemnity Corporation ("Integon Indemnity"), Integon Preferred Insurance Company ("Integon Preferred"), National General Insurance Company ("National General") and MIC General Insurance Corporation ("MIC General") (referred to herein collectively as the "Plaintiffs"), by and through undersigned counsel, complaining of the Defendants, and allege that:

## JURISDICTION, THE PARTIES AND VENUE

1.     This action is brought in accordance with 28 U.S.C. § 1332 (diversity of citizenship) as the matter is between citizens of different states and the matter in controversy exceeds the sum or value of Seventy Five Thousand Dollars ($75,000), exclusive of all interest and costs.

1

2. Integon National is a North Carolina corporation with its principal place of business located in Winston-Salem, Forsyth County, North Carolina. Integon National was, and is, in the business of, among other things, selling and providing automobile liability insurance, including coverage for bodily injury.

3. Integon General is a North Carolina corporation with its principal place of business located in Winston-Salem, North Carolina. Integon General was, and is, in the business of, among other things, selling and providing automobile liability insurance, including coverage for bodily injury.

4. Integon Indemnity is a North Carolina corporation with its principal place of business located in Winston-Salem, North Carolina. Integon Indemnity was, and is, in the business of, among other things, selling and providing automobile liability insurance, including coverage for bodily injury.

5. Integon Preferred is a North Carolina corporation with its principal place of business located in Winston-Salem, North Carolina. Integon Preferred was, and is, in the business of, among other things, selling and providing automobile liability insurance, including coverage for bodily injury.

6. National General Insurance Company ("National General") is a Missouri corporation with its principal place of business located in Winston-Salem, North Carolina. National General was, and is, in the business of, among other things, selling and providing automobile liability insurance, including coverage for bodily injury.

7. MIC General Insurance Corporation ("MIC") is a Michigan corporation, doing business in North Carolina with its principal place of business located in Winston-Salem, North

Carolina.  MIC is in the business of, among other things, selling and providing automobile liability insurance, including coverage for bodily injury.

8.      Defendant ArthroCare Corporation ("ArthroCare") is a Delaware corporation with its principal place of business located in Austin, Texas.

9.      Defendant ArthroCare Medical Corporation is a Nevada corporation with its principal place of business located in Austin, Texas.

10.     Defendant DiscoCare, Inc. ("DiscoCare") is a Delaware corporation with its principal place of business located in Austin, Texas.

11.     Plaintiffs are informed and believe that the Defendants have sufficient contacts with this district and generally that they are subject to the exercise of personal jurisdiction by this Court.

12.     Venue is proper in this district under 28 U.S.C. § 1391(a)(2) and 28 U.S.C. § 1391(a)(3).

## FACTS

13.     Upon information and belief, ArthroCare and/or ArthroCare Medical Corporation (both referred to herein as "ArthroCare"), is a medical device company that develops, manufactures and markets minimally invasive surgical products, including devices known as "SpineWands", for use in treating herniated discs through a minimally invasive percutaneous discectomy procedure, which ArthroCare refers to as nucleoplasty or Plasma Disc Decompression ("PDD").

14.     Upon information and belief, several years ago, the medical reimbursement environment for the PDD procedure became increasingly difficult and physicians and facilities had trouble obtaining reimbursement for this procedure.

3

15.     Upon information and belief, ArthroCare learned of a successful "reimbursement" model being utilized by one of its customers in Florida and decided to capitalize on it.  This customer, 2047 Palm Beach Lakes Partners, LLC d/b/a Palm Beach Lakes Surgery Center ("Palm Beach"), worked with a network of Florida personal injury attorneys who would refer automobile accident victims to them for PDD procedures.  The physicians at Palm Beach would perform the procedures and be paid out of the patient's settlement with his or her liability insurer.  In such a way, these physicians found a way to bypass reimbursement hurdles presented by traditional health insurers, many of whom considered PDD procedures to be experimental, and get paid for PDD procedures.

16.     Upon information and belief, through one of the physicians at Palm Beach, a podiatrist by the name of Dr. Jonathan Cutler ("Dr. Cutler"), DiscoCare was formed.  DiscoCare was designated as ArthroCare's exclusive third-party biller and distributor of its PDD SpineWands and was headquartered at the Palm Beach Lakes Surgery Center.  An ArthroCare employee named Michael Denker ("Denker") was sent by ArthroCare to run DiscoCare.  In conjunction with DiscoCare, ArthroCare formalized the Palm Beach Lakes "reimbursement" model into the "DiscoCare Model," a business model which focused on creating a self-referring network of physicians, facilities and law firms who would work together to drum up patient business and seek payment for Spine Wands PDD procedures from settlements with liability insurers.

17.     Despite the moral and potential legal ramifications of this business model, ArthroCare formed a joint venture with Palm Beach to form an entity that would be the exclusive distributor and "third-party biller" for ArthroCare SpineWands following the Palm Beach Lakes business model. On December 23, 2005, Dr. Cutler formed the DiscoCare entity and ArthroCare

4

placed Denker, an ArthroCare sales manager who sold SpineWands, at the helm of DiscoCare as its "Director."

18.     Upon information and belief, ArthroCare encouraged physicians and medical care providers to "upcode" PDD procedures to higher billing codes, so physicians and medical care providers could charge excessive fees for the same procedure.

19.     The "upcoding" of PDD procedures directly impacted and damaged liability insurers who were responsible for reimbursing for these procedures.

20.     Although ArthroCare was intertwined with DiscoCare, it attempted to give the appearance that DiscoCare was a completely separate entity.  However, ArthroCare would later admit its true relationship with DiscoCare in its restatement announcement.   Indeed, ArthroCare's Florida-based subsidiary Device Reimbursement Services ("DRS") shared a fax number with DiscoCare.  Moreover, although DiscoCare's Florida registration materials listed its principal place of business as being located in Margate, Florida, DiscoCare's functional address was 2047 Palm Beach Lakes Boulevard – the very same address as the Palm Beach Lakes Surgery Center.

21.     With the formation of DiscoCare, Defendants began to formalize the Palm Beach Lakes Surgery Center's business model into what became known as the "DiscoCare Model." Following the lead of the Palm Beach Lakes business model, ArthroCare encouraged its network of sales representatives to establish a "network" of law firms, surgeons, pain physicians, facilities and other medical care providers who referred business to one another.  Personal injury law firms would refer clients, usually victims of minor car accidents, to physicians, surgical centers or other medical care providers that were certified by DiscoCare as being trained in the PDD procedure, who actually performed the PDD procedures.

5

22.     Upon information and belief, to encourage physicians and/or facilities to get involved in the DiscoCare Model, the protocol established by ArthroCare provided that physicians and/or facilities would receive Letters Of Protection ("LOP's") – letters promising payment for treatment upon settlement – from the referring law firm.   In exchange for participation in the DiscoCare Model and in exchange for the LOP, DiscoCare would provide the physician and/or facility with ArthroCare SpineWands free of charge.   DiscoCare would bill the law firm for the SpineWand, but would accept the LOP in lieu of payment.   The physician and the facility were not responsible for the cost of the Spine Wand used in the PDD.   The physicians would then perform the PDD procedures on the personal injury clients using the ArthroCare Spine Wands.   Afterward, the physician and facility would provide medical records and bills to the personal injury attorneys for use in preparation of a demand letter to the appropriate liability carrier in preparation of settlement of the claims.

23.     Once the liability insurers settled with the client, the physicians, facilities, lawyers, ArthroCare and DiscoCare would get paid out of the proceeds.

24.     Upon information and belief, under the DiscoCare Model, since physicians and/or facilities received the ArthroCare SpineWands free of charge, and were guaranteed payment by the LOP's in the event of a settlement, there was little financial risk in doing these procedures. As a result, through the DiscoCare Model, physicians and facilities would be able to reap huge profits from PDD procedures with ArthroCare SpineWands, which they had previously found unprofitable.   In such a way, ArthroCare was able to vastly increase the number of physicians and facilities in its "network" for purposes of selling SpineWands.   Through the DiscoCare Model, ArthroCare had found a ready market for its SpineWands.

6

25.     Upon information and belief, the DiscoCare Model was then implemented in North Carolina, California, New York and Tennessee, among other states.

26.     More specifically, North Carolina medical care providers, such as Carolina Bone & Joint, P.A. ("CB&J"), Neuroscience & Spine Center of the Carolinas I, L.L.P. ("Neuroscience"), Greensboro Orthopaedics, P.A. ("Greensboro Orthopaedics"), and Greensboro Orthopaedic Center, P.A. ("Greensboro Orthopaedic Center"), under the aforementioned Model, worked with ArthroCare, DiscoCare, and personal injury attorneys who would refer automobile accident victims to CB&J, Neuroscience, Greensboro Orthopaedics, and Greensboro Orthopaedic Center for PDD procedures, to their own benefit and the benefit of ArthroCare and DiscoCare. Medical care providers in California, Florida, New York, and Tennessee, under the aforementioned Model, also worked with ArthroCare, DiscoCare, and personal injury attorneys who would refer automobile accident victims to those medical care providers for procedures, to their own benefit and the benefit of ArthroCare and DiscoCare.

27.     It was discovered, and ArthroCare and DiscoCare advocated, that if such medical care providers changed the bill code for the PDD procedure, they could drastically increase their charges for the procedure. This practice of using higher billing codes to demand higher charges for the same procedure is a fraudulent practice known as "upcoding."

28.     In turn, inflated charges could be used to increase the settlement demands to the liability insurers, including the Plaintiffs herein, so as to meet the liability threshold necessary to pressure them to avoid bad faith liability exposure and quickly settle claims. Consequently, ArthroCare could increase the prices of its Spine Wands and elevate its revenues. In such a way, everyone in the "network" benefited.

7

29. Relevant to "upcoding", generally, all medical procedures are assigned a CPT code by the American Medical Association ("AMA"), which accurately describes the medical, surgical, and/or diagnostic service being performed. All CPT codes are associated with a Relative Value Unit ("RVU"), which quantifies the values of different procedures or services that are provided by a physician. Based on a procedure's RVU, Medicare associates relative payment amounts – the amount that a physician or other medical care provider would be paid for that procedure under the Medicare fee schedule – with each CPT code. RVU's are also important outside of the Medicare context because they are utilized by private payers as a baseline for reimbursements.

30. Upon information and belief, ArthroCare knew that the appropriate CPT code for PDD procedures utilizing its SpineWands was 62287. Indeed, after ArthroCare first rolled out its nucleoplasty SpineWands, it hired Rheinisch Medical Management, Inc. ("Rheinisch"), consultants who specialize in medical coding and reimbursement strategies, to provide guidance on the proper code to be utilized for the PDD procedure. Rheinisch contacted the AMA who determined that CPT code 62287 was the appropriate code to use for the PDD procedure.

31. Despite this, under the DiscoCare Model, ArthroCare advocated that medical providers use CPT code 63056 to bill for the PDD procedures, where in fact this CPT code was the appropriate code for an "open microdiscectomy" procedure, a far more invasive and complicated procedure. Indeed, a microdiscectomy involves a surgical procedure performed through an incision, in which the medical care provider manually removes disc material that has protruded and is pressing on the nerve. Because of the invasive and complicated nature of the procedure, CPT code 63056 is associated with a significantly higher RVU than CPT code 62287, meaning that it can be billed for at a higher amount under the Medicare fee schedule.

8

ArthroCare used this code because it paid three times more than 62287 and by billing under this code, medical care providers could get almost three times the compensation from the insurance company.

32.     While an open microdiscectomy is a substantially different procedure than a PDD, ArthroCare advocated that medical care providers use a small incision to perform the procedure, instead of percutaneously (i.e., through a needle).  However, numerous medical sources confirm that a PDD does not require an incision.  The purpose of encouraging these medical care providers to use an incision instead of a needle was to bill at the upcoded rate.

33.     Upon information and belief, medical care providers did in fact use small incisions to perform the PDD procedures and billed for these procedures using CPT code 63056, where in fact this CPT code was the appropriate code for an "open microdiscectomy" procedure, a far more invasive and complicated procedure.

34.     Upon information and belief, medical care providers were aware that CPT code 63056 was not the appropriate CPT code for a PDD procedure, but that, in fact, this CPT code was the appropriate code for an "open microdiscectomy" procedure, a far more invasive and complicated procedure.

35.     Further, upon information and belief, the medical care providers who were utilizing incisions would usually make an incision, a pin stick, and take a scalpel and make a tiny incision requiring, generally, a two stitch close.  Indeed, ArthroCare's own materials reflect that it could be closed with "steristrips" (i.e., a surgical band-aid).

36.     Upon information and belief, as part of the DiscoCare Model, ArthroCare created a package of "DiscoCare Support Materials" for its sales representatives, which was also available on the Company's extranet: http://info.ArthroCare.com.  This comprehensive guide

was intended to assist ArthroCare sales representatives in employing the DiscoCare Model in their territories in order to increase participation by physicians, facilities and law firms in the DiscoCare "network," facilitate surgeons in upcoding PDD procedures, and maximize revenues associated with the DiscoCare scheme. To this end, the packet contained various protocols, prepared letters, checklists, and other forms.

37. For example, the DiscoCare Support Materials contained documents to be used to solicit physicians, medical care providers and law firms to participate in the DiscoCare network. The packet contained "Doctor Qualifier" forms to assist ArthroCare sales representatives in identifying physicians who were willing to upcode using CPT code 63056 in billing PDD procedures. In addition, the packet contained a prepared letter that a DiscoCare network surgeon could use to solicit new law firm clients for PDD procedures. This prepared letter attempted to get the lawyer's attention by stating that they would "accept liens on your clients that are suffering from neck and back pain as a result of auto accidents" and that "[t]he disc decompression surgery ranges from $44,000 to $60,000 depending on the number of levels affected." This stood in stark contrast to the prices ArthroCare listed for the PDD procedure in 2002 and 2005.

38. Through this prepared letter, which requested that the law firm provide the physician with the liability limits on the patient's insurance policy, ArthroCare encouraged medical care providers to base their charges according to available insurance coverage, and, upon information and belief, this was in fact what the medical care providers did.

39. If a liability policy was large, physicians and medical care providers could inflate their charges through upcoding so that a patient's medical expenses were close to the limit on the insurance policy. When such astronomical medical expenses were included in the demand to

liability insurers, including the Plaintiffs, these liability insurers would frequently settle with the client quickly to avoid for further exposure. On the other hand, the letter stated that "[i]f the patient has a $30,000 policy, we will need a minimum guarantee of $10,000 in order to perform the surgery." In this manner, ArthroCare ensured that it would receive payment for its SpineWands no matter what the policy limits.

40. Moreover, the packet contained various forms to assist network physicians and law firms in implementing the DiscoCare Model. For instance, the packet contained a "Standard Law Firm Protocol for Plasma Disc Decompression ("PDD") Procedures," and a "Medical Office Protocol for New PI Patients," which outlined all of the steps to be taken by these participants in the DiscoCare Model. The packet also contained various forms for ArthroCare sales representatives to provide to personal injury lawyers to help them make medical determinations as to their clients' symptoms and refer them to DiscoCare network doctors, who would walk them through a checklist of steps ultimately ending in a PDD procedure. Through this assembly line approach, created by ArthroCare, PDD procedures were being abused to drive up settlements with liability insurers, including the Plaintiffs, and line the pockets of Arthrocare and DiscoCare.

41. In addition, the DiscoCare Support Materials contained information to assist ArthroCare sales representatives in facilitating the upcoding of PDD procedures. For example, the packet contained key talking points of Nikki Bryant, ArthroCare's National Sales Trainer, in which she specifically highlights coding. Bryant advises that when talking to new surgeons or non-experienced PDD customers: "I skim over 62287 and focus on 63056." In addition, the packet also contained an ArthroCare Spine document entitled, "Program for Selling the Benefits of Plasma Disc Decompression to the Surgeons in Your Territory." One of the ways the

Company encouraged sales representatives to market PDD's by telling surgeons that "DiscoCare will provide the device to the facility at NO-CHARGE." This document also contains a discussion of how to code a PDD.

42. Through the DiscoCare Support Materials, Defendants ArthroCare and DiscoCare encouraged its sales representatives to establish a DiscoCare network, aggressively push PDD procedures even when not medically necessary, and guide physicians and medical care providers to engage in upcoding.

43. As the DiscoCare Model began to gain traction, ArthroCare sought to grow its network of physicians, facilities, and law firms by encouraging its sales representatives to expand the DiscoCare network in their territories and rolling out the Model nationwide, and specifically in North Carolina, California, Florida, New York and Tennessee.

44. As a result of the agreement between and among the Defendants to implement the DiscoCare Model, and as a result of the implementation of same, including, but not limited to the practice of upcoding, the Plaintiff-liability insurers were damaged by paying fraudulently inflated liability claims involving the DiscoCare Model and upcoding scheme.

## CAUSES OF ACTION

### CAUSES OF ACTION UNDER NORTH CAROLINA LAW

### First Cause Of Action: Fraud

45. The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 44 above.

46. As set forth more specifically above, the Defendants made false representations to the Plaintiff-liability insurers, upon which the Plaintiffs reasonably relied, and the Defendants

concealed material facts from the Plaintiffs, through the planning and implementation of the DiscoCare Model and upcoding scheme.

47.      Said false representations and concealment of material facts were reasonably calculated to deceive the Plaintiffs.

48.      Said false representations and concealment of material facts were made with intent to deceive the Plaintiffs.

49.      Said false representations and concealment of material facts were made and did in fact deceive the Plaintiffs

50.      As a result of said false representations and concealment of material facts, the Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000).

### Second Cause Of Action: Negligent Misrepresentation

51.      The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 50 above.

52.      In the alternative, the Defendants prepared and provided information to the Plaintiffs without reasonable care through the planning and implementation of the DiscoCare Model and upcoding scheme.

53.      The Defendants owed a duty to the Plaintiffs a duty of care.

54.      The Plaintiffs justifiably relied on such information to their detriment and the Plaintiffs, in the exercise of due diligence, did not have the means or the opportunity to discover such misrepresentation through reasonable inquiry.

55.      As a result of said negligent representations, the Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000).

## Third Cause Of Action: Unfair And Deceptive Trade Practices

56.     The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 55 above.

57.     The Defendants committed unfair and deceptive acts and practices as described herein through the planning and implementation of the DiscoCare Model and upcoding scheme, pursuant to N.C.G.S. § 75-1, *et seq*.

58.     Such unfair and deceptive acts and practices had the capacity or tendency to deceive and did in fact deceive.

59.     Such unfair and deceptive acts and practices were in or affecting commerce.

60.     Such unfair and deceptive acts and practices proximately caused actual injury to the Plaintiffs.

61.     As a result of said unfair and deceptive acts and practices, the Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000) and are entitled to treble damages and attorneys fees.

## Fourth Cause Of Action: Civil Conspiracy

62.     The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 61 above.

63.     A conspiracy in fact existed among and between the Defendants through the planning and implementation of the DiscoCare Model and upcoding scheme.

64.     There was an agreement between and among the Defendants to commit such wrongful acts as described herein.

65.     As a result of said wrongful conduct and civil conspiracy, the Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000).

14

## Fifth Cause Of Action: Punitive Damages

66.     The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 65 above.

67.     As set forth herein, the Defendants are liable to the Plaintiffs for compensatory damages for damages the Plaintiffs sustained through the Defendants' planning and implementation of the DiscoCare Model and upcoding scheme.

68.     The Defendants are also liable to the Plaintiffs for punitive damages based upon fraud, malice and willful or wanton conduct, pursuant to N.C.G.S. § 1D-1, *et seq.*, as set forth herein.

69.     The Plaintiffs specifically aver and plead that the officers, directors, or managers of the Defendant corporations participated in or condoned the fraud, malice and willful or wanton conduct as set forth herein.

70.     As a result of said wrongful conduct and civil conspiracy, the Plaintiffs seek punitive damages in an amount in excess of Seventy Five Thousand Dollars ($75,000).

## CAUSES OF ACTION UNDER CALIFORNIA LAW

## First Cause Of Action: Fraud

71.     The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 70 above.

72.     As set forth more specifically above, the Defendants made false representations to the Plaintiff-liability insurers, upon which the Plaintiffs reasonably relied, and the Defendants concealed material facts from the Plaintiffs, through the planning and implementation of the DiscoCare Model and upcoding scheme.

15

73.     Said false representations and concealment of material facts were reasonably calculated to deceive the Plaintiffs.

74.     Said false representations and concealment of material facts were made with intent to deceive the Plaintiffs.

75.     Said false representations and concealment of material facts were made and did in fact deceive the Plaintiffs

76.     As a result of said false representations and concealment of material facts, the Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000).

## Second Cause Of Action: Negligent Misrepresentation

77.     The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 76 above.

78.     In the alternative, the Defendants prepared and provided information to the Plaintiffs without reasonable care through the planning and implementation of the DiscoCare Model and upcoding scheme.

79.     The Defendants owed a duty to the Plaintiffs a duty of care.

80.     The Plaintiffs justifiably relied on such information to their detriment and the Plaintiffs, in the exercise of due diligence, did not have the means or the opportunity to discover such misrepresentation through reasonable inquiry.

81.     As a result of said negligent representations, the Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000).

## Third Cause Of Action: Violation of California Unfair Competition Law,
## West's Ann. Cal. Bus. & Prof. Code § 17200

82.     The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 81 above.

83.     The Defendants committed unfair and deceptive acts and practices as described herein through the planning and implementation of the DiscoCare Model and upcoding scheme, in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

84.     Such unfair and deceptive acts and practices had the capacity or tendency to deceive and did in fact deceive.

85.     Such unfair and deceptive acts and practices were in or affecting commerce.

86.     Such unfair and deceptive acts and practices proximately caused actual injury to the Plaintiffs.

87.     In so doing, the Defendants violated laws of California, including but not limited to, violation of laws pertaining to fraud including Cal. Penal Code §§ 548, 549 and 550 and violation of laws regulating health and safety, the practice of medicine and medical billing practices.

88.     As a result of said unfair and deceptive acts and practices, the Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000) and are entitled to restitution and injunctive relief.

## Fourth Cause Of Action: Civil Conspiracy

89.     The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 88 above.

90.     A conspiracy in fact existed among and between the Defendants through the planning and implementation of the DiscoCare Model and upcoding scheme.

17

91.     There was an agreement between and among the Defendants to commit such wrongful acts as described herein.

92.     As a result of said wrongful conduct and civil conspiracy, the Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000).

### Entitlement to Punitive Damages

93.     The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 92 above.

94.     As set forth herein, the Defendants are liable to the Plaintiffs for compensatory damages for damages the Plaintiffs sustained through the Defendants' planning and implementation of the DiscoCare Model and upcoding scheme.

95.     The Defendants are also liable to the Plaintiffs for punitive damages based upon fraud under Cal.Civ.Code § 3294 due to their intentional misrepresentation, deceit and concealment of material facts known to the Defendants with the intention of depriving the Plaintiffs of property and legal rights and otherwise causing injury to the Plaintiffs through the planning and implementation of the DiscoCare Model and upcoding scheme.

96.     The Plaintiffs specifically aver and plead that the officers, directors, and managing agents of the Defendant corporations had advanced knowledge of the the DiscoCare Model and consciously disregarded, authorized, and ratified the actions of their agents and employees in carrying out the DiscoCare Model as set forth herein.

97.     As a result of said wrongful conduct, including fraud, the Plaintiffs seek punitive damages in an amount in excess of Seventy Five Thousand Dollars ($75,000).

## CAUSES OF ACTION UNDER FLORIDA LAW

### First Cause Of Action: Fraud

98. The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 97 above.

99. As set forth more specifically above, the Defendants made false representations to the Plaintiff-liability insurers, upon which the Plaintiffs reasonably relied, and the Defendants concealed material facts from the Plaintiffs, through the planning and implementation of the DiscoCare Model and upcoding scheme.

100. Said false representations and concealment of material facts were reasonably calculated to deceive the Plaintiffs.

101. Said false representations and concealment of material facts were made with intent to deceive the Plaintiffs.

102. Said false representations and concealment of material facts were made and did in fact deceive the Plaintiffs

103. As a result of said false representations and concealment of material facts, the Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000).

### Second Cause Of Action: Negligent Misrepresentation

104. The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 103 above.

105. In the alternative, the Defendants prepared and provided information to the Plaintiffs without reasonable care through the planning and implementation of the DiscoCare Model and upcoding scheme.

106. The Defendants owed a duty to the Plaintiffs a duty of care.

107. The Plaintiffs justifiably relied on such information to their detriment and the Plaintiffs, in the exercise of due diligence, did not have the means or the opportunity to discover such misrepresentation through reasonable inquiry.

108. As a result of said negligent representations, the Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000).

## Third Cause Of Action: Violation of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*

109. The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 108 above.

110. The Defendants committed unfair and deceptive acts and practices as described herein through the planning and implementation of the DiscoCare Model and upcoding scheme, in violation of Fla. Stat. § 501.201, *et seq*.

111. Such unfair and deceptive acts and practices had the capacity or tendency to deceive and did in fact deceive.

112. Such unfair and deceptive acts and practices were in or affecting commerce.

113. Such unfair and deceptive acts and practices proximately caused actual injury to the Plaintiffs.

114. In so doing, the Defendants violated other laws of Florida.

115. As a result of said unfair and deceptive acts and practices, the Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000), are entitled to treble damages, attorneys fees and are entitled to injunctive relief.

## Fourth Cause Of Action: Civil Conspiracy

116.     The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 115 above.

117.     A conspiracy in fact existed among and between the Defendants through the planning and implementation of the DiscoCare Model and upcoding scheme.

118.     There was an agreement between and among the Defendants to commit such wrongful acts as described herein.

119.     As a result of said wrongful conduct and civil conspiracy, the Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000).

## Fifth Cause Of Action: Punitive Damages

120.     The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 119 above.

121.     As set forth herein, the Defendants are liable to the Plaintiffs for compensatory damages for damages the Plaintiffs sustained through the Defendants' planning and implementation of the DiscoCare Model and upcoding scheme.

122.     The Defendants are also liable to the Plaintiffs for punitive damages based upon their direct liability and vicarious liability for the acts of their employees and agents, due to willful, wanton, and fraudulent implementation of the DiscoCare Model.

123.     The Plaintiffs specifically aver and plead that the officers, directors, or managers of the Defendant corporations participated in or condoned the willful, wanton, and fraudulent conduct as set forth herein.

124.     The actions of the Defendants foreseeably contributed to the Plaintiffs' injuries.

125.    As a result of said wrongful conduct and civil conspiracy, the Plaintiffs seek punitive damages in an amount in excess of Seventy Five Thousand Dollars ($75,000).

## CAUSES OF ACTION UNDER NEW YORK LAW

### First Cause Of Action: Fraud

126.    The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 125 above.

127.    As set forth more specifically above, the Defendants made false representations to the Plaintiff-liability insurers, upon which the Plaintiffs reasonably relied, and the Defendants concealed material facts from the Plaintiffs, through the planning and implementation of the DiscoCare Model and upcoding scheme.

128.    Said false representations and concealment of material facts were reasonably calculated to deceive the Plaintiffs.

129.    Said false representations and concealment of material facts were made with intent to deceive the Plaintiffs.

130.    Said false representations and concealment of material facts were made and did in fact deceive the Plaintiffs

131.    As a result of said false representations and concealment of material facts, the Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000).

### Second Cause Of Action: Negligent Misrepresentation

132.    The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 131 above.

133.     In the alternative, the Defendants prepared and provided information to the Plaintiffs without reasonable care through the planning and implementation of the DiscoCare Model and upcoding scheme.

134.     The Defendants owed a duty to the Plaintiffs a duty of care.

135.     The Plaintiffs justifiably relied on such information to their detriment and the Plaintiffs, in the exercise of due diligence, did not have the means or the opportunity to discover such misrepresentation through reasonable inquiry.

136.     As a result of said negligent representations, the Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000).

### Third Cause Of Action: Violation of Unfair and Deceptive Trade Practices Statute Pursuant to General Business Law  § 349, *et seq.*

137.     The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 136 above.

138.     The Defendants committed unfair and deceptive acts and practices as described herein through the planning and implementation of the DiscoCare Model and upcoding scheme, in violation of General Business Law  § 349, *et seq.*

139.     Such unfair and deceptive acts and practices had the capacity or tendency to deceive and did in fact deceive.

140.     Such unfair and deceptive acts and practices were in or affecting commerce.

141.     Such unfair and deceptive acts and practices proximately caused actual injury to the Plaintiffs.

142.     In so doing, the Defendants violated other laws of New York.

143.    As a result of said unfair and deceptive acts and practices, the Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000) and are entitled to treble damages and attorneys fees.

## CAUSES OF ACTION UNDER TENNESSEE LAW

### First Cause Of Action: Fraud

144.    The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 143 above.

145.    As set forth more specifically above, the Defendants made false representations to the Plaintiff-liability insurers, upon which the Plaintiffs reasonably relied, and the Defendants concealed material facts from the Plaintiffs, through the planning and implementation of the DiscoCare Model and upcoding scheme.

146.    Said false representations and concealment of material facts were reasonably calculated to deceive the Plaintiffs.

147.    Said false representations and concealment of material facts were made with intent to deceive the Plaintiffs.

148.    Said false representations and concealment of material facts were made and did in fact deceive the Plaintiffs.

149.    As a result of said false representations and concealment of material facts, the Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000).

### Second Cause Of Action: Negligent Misrepresentation

150.    The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 149 above.

151.    In the alternative, the Defendants prepared and provided information to the Plaintiffs without reasonable care through the planning and implementation of the DiscoCare Model and upcoding scheme.

152.    The Defendants owed a duty to the Plaintiffs a duty of care.

153.    The Plaintiffs justifiably relied on such information to their detriment and the Plaintiffs, in the exercise of due diligence, did not have the means or the opportunity to discover such misrepresentation through reasonable inquiry.

154.    As a result of said negligent representations, the Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000).

## Third Cause Of Action: Violation of Consumer Protection Act, Tenn. Code Ann. § 47-18-102, *et seq*.

155.    The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 154 above.

156.    The Defendants committed unfair and deceptive acts and practices as described herein through the planning and implementation of the DiscoCare Model and upcoding scheme, in violation of Tenn. Code Ann. § 47-18-102, *et seq*.

157.    Such unfair and deceptive acts and practices had the capacity or tendency to deceive and did in fact deceive.

158.    Such unfair and deceptive acts and practices were in or affecting commerce.

159.    Such unfair and deceptive acts and practices proximately caused actual injury to the Plaintiffs.

160.    In so doing, the Defendants violated other laws of Tennessee.

161.     As a result of said unfair and deceptive acts and practices, the Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000) and are entitled to injunctive relief.

### Fourth Cause Of Action: Civil Conspiracy

162.     The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 161 above.

163.     A conspiracy in fact existed among and between the Defendants through the planning and implementation of the DiscoCare Model and upcoding scheme.

164.     There was an agreement between and among the Defendants to commit such wrongful acts as described herein.

165.     As a result of said wrongful conduct and civil conspiracy, the Plaintiffs have been damaged in an amount in excess of Seventy Five Thousand Dollars ($75,000).

### Fifth Cause Of Action: Punitive Damages

166.     The Plaintiffs reallege and incorporate herein by reference their allegations contained in Paragraphs 1 through 165 above.

167.     As set forth herein, the Defendants are liable to the Plaintiffs for compensatory damages for damages the Plaintiffs sustained through the Defendants' planning and implementation of the DiscoCare Model and upcoding scheme.

168.     The Defendants are also liable to the Plaintiffs for punitive damages based upon fraud, malice and willful or wanton conduct, pursuant to Tennessee law, as set forth herein.

169.     The Plaintiffs specifically aver and plead that the officers, directors, or managers of the Defendant corporations participated in or condoned the fraud, malice and willful or wanton conduct as set forth herein.

170.    As a result of said wrongful conduct and civil conspiracy, the Plaintiffs seek punitive damages in an amount in excess of Seventy Five Thousand Dollars ($75,000).

**PRAYER FOR RELIEF**

**WHEREFORE**, for the foregoing reasons, the Plaintiffs respectfully pray:

1.    That the Plaintiffs have and recover compensatory damages in an amount in excess of Seventy Five Thousand Dollars ($75,000) from the Defendants;

2.    That the Plaintiffs have and recover damages caused by Defendants' unfair and deceptive trade practices in an amount in excess of Seventy Five Thousand Dollars ($75,000), that such damages to be trebled pursuant to N.C.G.S. § 75-16 and that Plaintiffs be awarded attorneys' fees in accordance with N.C.G.S. § 75-16.1;

3.    That the Plaintiffs have and recover damages caused by Defendants' violation of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*, violation of New York's Unfair and Deceptive Trade Practices Statute and in violation of New York's General Business Law § 349, *et seq.* and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200;

4.    That the Defendants be enjoined from further violation of state consumer protection laws, including but not limited to Tennessee's Consumer Protection Act, Tenn. Code Ann. § 47-18-102, *et seq.* and Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.21, *et seq.*;

5.    That the Plaintiffs have and recover punitive damages in an amount in excess of Seventy Five Thousand Dollars ($75,000) pursuant to N.C.G.S. § 1D-1, *et seq.*, Cal.Civ.Code § 3294, under Florida law, under New York law and under Tennessee law;

6.    That the Plaintiffs have and recover additional attorneys fees as allowed by law;

7. That damages be trebled as allowed by law;

8. That the Plaintiffs have and recover restitution as allowed by law; and

9. That the Plaintiffs have such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

In accordance with Federal Rule of Civil Procedure 38, Plaintiffs request a trial by jury on all claims and issues so triable.

This the 13th day of July, 2010.

BENNETT & GUTHRIE, P.L.L.C.


/s/ Rodney A. Guthrie
Rodney A. Guthrie
N.C. State Bar No. 9244
rguthrie@bennett-guthrie.com


/s/ Roberta B. King
Roberta B. King
N.C. State Bar No. 30717
rking@bennett-guthrie.com
1560 Westbrook Plaza Drive
Winston-Salem, NC  27103
(336) 765-3121


/s/ Torin L. Fury
Torin L. Fury
NC State Bar No.18195
fury@frazierlawnc.com
Frazier, Hill & Fury, LLP
500 W. Friendly Ave., Suite 100
Greensboro, NC  27401
(336) 378-9411
*Attorneys for Plaintiffs*